**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

September 16, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Summer W. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-3216-DRM

Dear Counsel:

On September 28, 2025, Plaintiff Summer W. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 13, 16 and 19). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I. <u>PROCEDURAL BACKGROUND</u>

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on March 22, 2022 and a Title XVI application for Supplemental Security Income ("SSI") benefits on March 14, 2024, both alleging a disability onset of September 14, 2014, later amended to June 15, 2017. Tr. 73. Plaintiff's claims were denied initially and on reconsideration. Tr. 73. On August 13, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 70-90. Following the hearing, on October 10, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 *et seq.*, during the relevant time frame. Tr. 85-86. On September 10, 2025, the Appeals Council denied Plaintiff's request for review as to her Title II application, Tr. 97-102, so the ALJ's decision constitutes the final, reviewable decision of the SSA as to Plaintiff's Title II application. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

Also on September 10, 2025, the Appeals Council determined Plaintiff's Title XVI application had been improperly escalated and remanded it back to the ALJ with instructions for the ALJ to refer the Title XVI claim to the field office, Tr. 91-96, which the ALJ did on September 23, 2025. Tr. 1-4. Because there has been no final decision denying Plaintiff's Title XVI claim, the Court limits its review to the denial of her Title II application. *See* 20 C.F.R. § 422.210 ("A claimant may obtain judicial review of a decision by an administrative law judge or administrative appeals judge if the Appeals Council has denied the claimant's request for review, or of a decision

by the Appeals Council when that is the final decision of the Commissioner."); *see also* 42 U.S.C. 405(g).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since June 15, 2017, the amended alleged onset date." Tr. 75. At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "depressive disorder, bipolar disorder, anxiety disorder, and obesity." Tr. 75. The ALJ also determined that Plaintiff suffered from the non-severe impairments of: hypertension, low back pain that radiated to her left leg, lumbago, and shortness of breath. Tr. 76. At step three, the ALJ determined that Plaintiff has not had "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 76. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb stairs or ladders. She cannot perform production rate or pace work, meaning no assembly line or fast paced production. She cannot work with the public. She can perform isolated work with occasional supervision. She requires a low stress work environment with occasional decisionmaking and occasional changes in work setting. She can perform simple, routine tasks. Due to issues with fatigue and pain, she will be off task 5% of the workday.

Tr. 79. At steps four and five, the ALJ determined that Plaintiff had no past relevant work, but that Plaintiff could perform jobs that existed in significant numbers in the national economy, such as inspector & hand packager, garment sorter, and price marker. Tr. 84-85. Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. Tr. 85-86.

## III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The

findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff makes two arguments. This opinion focuses on Plaintiff's second argument, that the ALJ failed to define a restriction included in the hypotheticals to the vocational expert ("VE"), on which the VE later improperly relied, and then formulated an RFC with the same restriction. ECF No. 13 at 12-16. Specifically, in the hypotheticals to the VE, the ALJ posited an individual who is limited to "no production rate or pace work. That is, no assembly line or fast-paced production," and the RFC includes the same restriction that Plaintiff can "cannot perform production rate or pace work, meaning no assembly line or fast paced production." *Id.* at 12; Tr. 34-35; Tr. 79. Plaintiff argues that the ALJ failed to define the restriction, which is also not defined by regulation, that examples of occupations do not clarify the limitation, and that the error is not harmless because the ALJ relied on the VE's testimony, based on the inadequate hypothetical, to conclude that Plaintiff is not disabled. *Id.* at 13-16.

In response, the Commissioner argues that the ALJ provided "sufficient detail and context" and "numerous descriptors" to explain the restriction, that the cases cited by Plaintiff are distinguishable, and that "the ALJ's use of a production pace limitation was properly contextualized by the example of assembly line work or fast paced production." ECF No. 16 at 6-11. In reply, Plaintiff reiterates her arguments and argues that Defendant failed to resolve the issues in his brief. ECF No. 19 at 4-7.

The issue which Plaintiff raises has its genesis in *Thomas v. Berryhill*, where the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine "whether their inclusion in [the] RFC is supported by substantial evidence." *Id*. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at 313, n.5.

Although the court in *Thomas* identified additional grounds for remand, later decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. *See Perry v. Berryhill,* 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how

[she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions'") (quoting *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015)). *See also, e.g., Adrian H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3268, 2022 WL 112033, at *1 (D. Md. Jan. 12, 2022) (remanding where an "ALJ presented the VE with a hypothetical including 'no fast pace or strict production requirements,' with no further definition of those terms"); *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021) (remanding where RFC limited plaintiff to work "requiring no fast paced production," which the court analogized to the terms in *Thomas* and *Perry* "both in form and defect"); *Jennifer Anne S. v. Saul*, No. TMD 20-519, 2021 WL 2139432, at *5 (D. Md. May 26, 2021) (remanding where RFC limited plaintiff to work "which would not require a fast pace or production quotas such as would customarily be found working on an assembly line" and collecting cases remanding based on similar undefined RFC terms); *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("First, while the phrase 'production rate pace' is used in an appendix to the DOT, a definition is not provided. Second, the term 'production pace or strict production quotas' is directly analogous to the term deemed problematic in *Thomas*, and the Court cannot ascertain how the inclusion of the word 'strict' would cure the problem identified by the Fourth Circuit.")[1]; *Nora P. v. Comm'r Soc. Sec.*, No. SAG-18-1604, 2019 U.S. Dist. LEXIS 68383, at *4-5 (D. Md. Apr. 23, 2019) (remand warranted where RFC failed to define phrase "no fast pace or strict production requirements.").

Here, however, the ALJ has *not* simply left the term "production rate or pace work" undefined. Rather, in the RFC and in the hypotheticals to the VE, the ALJ attempted to explain what was meant by the term: "production rate or pace work - *meaning* no assembly line or fast paced production," Tr. 79 (emphasis added), and "no production rate or pace work. *That is*, no assembly line or fast-paced production," Tr. 34-35 (emphasis added). That makes the analysis in this case distinguishable from a line of cases in which this court has remanded ALJ decisions involving RFCs or VE hypotheticals with the terms "production rate," "production pace," or

---

[1] The term "production rate pace" appears in Appendix C to the Department of Labor's *Dictionary of Occupational Titles* ("DOT"), in a section enumerating three situations in which occupations that would otherwise be classified as "sedentary work" (because the amount of weight lifted is negligible) instead qualify as "light work." The third such situation is: "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C — Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The discussion goes on to explain: "NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." *Id.* Nearly-identical language appears in the DOT's companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"), Appendix C – Physical Demands: "working at a production rate pace while constantly pushing or pulling materials even though the weight of the materials is negligible." However, no definition is given of "production rate pace" in either volume, and the term's use in this narrow context does not elucidate a general meaning.

similar, coupled with *examples* such as assembly line work or work with time- or piece-based quotas.

Such cases have frequently relied on *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025) as persuasive in elucidating the holding of *Thomas* for situations where ALJs provide examples such as assembly line work or time- or piece-based quotas.[2] In *Linger*, the Fourth Circuit held that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description of a limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry*, 765 F. App'x at 872). Here, the ALJ did not use the language "such as," "as in," "e.g.," or "such as would customarily be found on" to introduce the *examples* of assembly line work or fast paced production while leaving the broader scope of "no production rate or pace work" undefined. Rather, the ALJ attempted to make clear what was meant in the hypotheticals posed to the VE and in Plaintiff's RFC ("That is, no assembly line or fast-paced production;" "meaning no assembly line or fast paced production"). The precision of that definition then, or the terms that comprise it, becomes the relevant inquiry.

The ALJ employed a term within the definition, "fast-paced production," that is itself ambiguous, and which therefore cannot adequately clarify the meaning and scope of the term

[2] *See, e.g., Joeann S. v. Bisignano*, No. AAQ-25-01954, 2026 WL 2110570, at *1 (D. Md. July 22, 2026) ("fast-paced production requirements such as fast paced assembly line work or high-volume piecemeal quotas"); *Patrice V. v. Bisignano*, No. DRM-25-3126, 2026 WL 2035205, at *4 (D. Md. July 14, 2026) ("a specific production rate pace, such as assembly line work or an hourly production quota"); *Jasmine M. v. Bisignano*, No. JMC-25-CV-3291, 2026 WL 2035198, at *2 (D. Md. July 14, 2026) ("work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas"); *Alkein C. v. Bisignano*, No. TJS-25-1310, 2026 WL 1266164, at *1 (D. Md. May 8, 2026) ("production rate for pace of work (e.g., assembly-line work)"); *Al-Nissa J. v. Bisignano*, No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026) ("specific production rate pace, such as assembly line work or an hourly production quota"); *Mark M. v. Bisignano*, No. EA-24-3738, 2026 WL 739424, at *7 (D. Md. Mar. 16, 2026) ("work requiring a specific production rate, such as assembly line work or work that requires hourly quotas"); *Jason M. v. Bisignano*, No. DRM-25-0358, 2026 WL 523879, at *2-*4 (D. Md. Feb. 25, 2026) ("specific rate production, such as assembly line work or work that requires hourly quotas.") *See also Kacy W. v. Bisignano*, No. TJS-25-1465, 2026 WL 2035417, at *2 (D. Md. July 14, 2026) ("a fast pace or production quotas such as would customarily be found on an assembly line"). *But see Autumn C. v. Bisignano*, No. EA-25-1592, 2026 WL 2042105, at *3 (D. Md. July 15, 2026) (distinguishing *Linger* and holding that "the phrasing employed here—that Plaintiff could 'perform work where she is limited to simple, routine, and repetitive tasks in an environment where she is not expected to perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas'—contains commonly understood terms and examples that collectively provide sufficient explanation for appellate review.")

"production rate or pace work." "Different individuals can have different conceptions of what work is or is not 'fast.'" *Ginger N. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1830, 2019 WL 1903548, at *4 (D. Md. Apr. 29, 2019) (quoting *Crocetti v. Comm'r. Soc. Sec.*, Civil No. SAG-17-1122, 2018 U.S. Dist. LEXIS 95697 at *3 (D. Md. June 6, 2018)). As the court determined in *Trena Sue*, without explanations about what the ALJ meant by the term "requiring no fast paced production," what the VE understood that term to mean, or what would qualify as work "requiring no fast paced production," "the Court cannot evaluate whether substantial evidence supported the ALJ's determinations…that plaintiff could perform [the identified] jobs." *Trena Sue Y.*, 2021 WL 4034264, at *4. See *Wendy S. v. Saul*, No. DLB-19-3553, 2021 WL 168444, at *3 (D. Md. Jan. 19, 2021) ("I cannot discern what the ALJ actually meant by 'no fast pace or strict production requirements.'"); *Nora P.*, 2019 U.S. Dist. LEXIS 68383, at *4-5 (ambiguous term "no fast pace or strict production requirements" without further explanation frustrates appellate review); *Madison S. v. Bisignano*, No. DRM-24-2982, 2025 WL 3157635, at *3 (D. Md. Nov. 12, 2025) ("the ALJ's use of the terms 'fast-paced production' and 'fast-paced assembly line work or high-volume piecemeal quotas' does not provide sufficient information for the Court to discern its intended meaning"); *Joeann S. v. Bisignano*, No. AAQ-25-1954, 2026 WL 2110570, at *3 (D. Md. July 22, 2026) ("Without an understanding of what 'no fast paced production requirements' means, it is not possible to determine where the logical explanation lies between the provided evidence and the stated conclusion."); *Lyaundra C. v. Bisignano*, No. DRM-24-3659, 2026 WL 507423, at *4 (D. Md. Feb. 24, 2026) ("the ALJ adopted a limitation to 'no fast-paced production requirements such as fast-paced assembly line work or high-volume piecemeal quotas,' but offered no clarification beyond these examples—which are themselves ambiguous since 'fast-paced' and 'high-volume' are purely relative terms"); *cf. Margaret R. v. Comm'r, Soc. Sec. Admin.*, No. DRM-25-2814, 2026 WL 2425935, at *3 (D. Md. Aug. 19, 2026) (affirming where the definition employed two terms and "[b]oth concepts—assembly lines, and strict (i.e. rigidly enforced) quotas—are easily understood in common parlance.") (citing *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021)).

For the reasons discussed above, it is difficult for the Court to ascertain whether the RFC finding in this case was supported by substantial evidence, *see Thomas*, 916 F.3d at 311-12, or whether it was possible for the VE to know whether a person limited to "no production rate or pace work. That is, no assembly line or fast-paced production," could perform the job functions of inspector & hand packager, garment sorter, and price marker.

Because the case is being remanded on other grounds, the Court need not address Plaintiff's other argument. On remand, the ALJ is welcome to consider that argument and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V. <u>CONCLUSION</u>

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED as to Plaintiff's Title II application due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge